counsel, you may proceed. May please the court. My name is Daniel Bernstein. I'm a Deputy Attorney General representing Respondent and Appellant. And I would like to reserve five minutes of my time for rebuttal. In the interest of federalism, we made you an assistant U.S. attorney on the docket sheet, but I noticed that. Okay. More confusion in the AEDPA arena. All right. Thank you. You might try putting in for an extra paycheck. In this habeas case, the district courts substituted its judgment for that of the State court, and that is not permitted under the AEDPA. The State court considered numerous circumstances of the police interview of Ramazzini, including the detective's ambiguous reference to the death penalty and the fact that Ramazzini did not admit his involvement in the murder until he was told much later in the interview that a co-defendant had implicated him. In finding that the confession was involuntary, the district court seized upon the reference to the death penalty and the fact that the death penalty could not legally be applied to Ramazzini because he was not 18 years old at that time. The district court, however, ignored some other key circumstances, including that there was a one-and-a-half-hour delay in Ramazzini's subsequent confession and the fact that after the reference to the death penalty, Ramazzini continued to profess his ignorance up until the point at which, 40 minutes later, he was told that a co-defendant had implicated him. Those circumstances were considered key by the State court, and they apparently were not considered at all by the district court. Well, what should the district court have done in terms of the, I won't say standard of review, but the test to be applied in a habeas case under AEDPA? Well, there are two standards, I think, that come into play here, because voluntariness of the confession is really a mixed question of law and fact. The subsidiary question, the subsidiary issues, the circumstances surrounding the interview are questions of fact. And the magistrate judge of the district court, ultimately, should have accorded deference to the State court's finding under 2254d2, which says that unless it's an unreasonable determination of the facts, it is accorded deference. In this case, the State court had an interpretation of the reference to the death penalty, which was reasonable. The reference came in the context of the context of referring to the death penalty. But is that a question of law, or is that a question of fact? The interpretation of what the meaning of that reference to the death penalty was, was a question of fact. It is a circumstance among many that goes into the ultimate determination of whether the confession was involuntary. That is a question of law. And that question, it needs to be analyzed under 2254d1, which also requires an unreasonable application of Supreme Court law. The district court, I believe, went astray by not evaluating the meaning of the detective statement under 2254d2, not according real deference to the State court, and then further, not according the State court's analysis under the totality of the circumstances test under 2254d1. The district court apparently was, as I say, seized upon the fact that Ramazzini was not legally eligible for the death penalty. The district court believed that the investigator was bluffing when there really was no evidence as to whether he was intentionally misrepresenting the penalty or not. Well, Judge Ramrell's interpretation of what happened was not unreasonable, was it? I mean, it certainly — I mean, reasonable minds could differ in terms of whether it was or was not voluntary under the circumstances. I would — that is probably true. I would submit that the determination about whether the reference to the death penalty was a threat or applied to Ramazzini as well as to Contreras, the other codefendant, that the district court's interpretation of that was perfectly reasonable. But so was the State court's. There were two reasonable interpretations here. And when you have two reasonable interpretations of evidence, one of them cannot be unreasonable. I think it's a much tougher argument to say that the district court's interpretation of the voluntariness question under 2254d1 was reasonable. I think that the State court's interpretation was — was much more reasonable or made much more sense. But even if it was reasonable, that's not the test. The test is, was the State court's application of the totality of the circumstance test unreasonable? It was not. It doesn't matter whether the district court disagreed with it or thought it had a better analysis. The only question is objective unreasonability. That's what the Supreme Court has told — told us many times. And in this case, that level of deference was not accorded to the State court's factual and legal determinations. Would it be your position, Mr. Bernstein, that the only way that the Federal district court could declare the State court's determination objectively unreasonable would have been to hold an evidentiary hearing and to unearth some additional evidence that had not been before the State courts at the time? It's another way of saying, is your position that basically a Federal district court could never declare a State court factual determination objectively unreasonable? No. No, Judge Talman. There are — there are cases that — circumstances in which a State court determination could be unreasonable. On the facts, Taylor v. Maddox, this Court has explained several ways in which a factual determination can be unreasonable, including if the fact-finding process was flawed in some basic way, or if the — if the State court plainly misapprehended or misconstrued the record. Under those circumstances, you could have an unreasonable factual determination. Similarly, you could have an unreasonable legal determination if the circumstances are just so overwhelming that no other reasonable conclusion could be made, then that a — that a confession was voluntary. Here, those circumstances simply do not exist. We — we have a — we have an interrogation that went on for over three hours, and there are many circumstances in that interrogation. The State court considered every relevant one and — and made a reasonable conclusion after viewing the videotape of the interview, the transcript, pretrial for evidence code section 402 hearing. All those circumstances were taken into effect — into consideration. And the State court's ruling was — was perfectly reasonable. If I could just point out a couple of other circumstances. The — I think the district court went astray in — in part by considering the officer's state of mind or what the officer, the agent's intentions were. The district court concluded that the agent was bluffing when he made the reference to the death penalty, and that the death penalty reference was designed to extract a confession. There is no evidence that there was an intentional misrepresentation. And furthermore, even though Mr. Ramazzini was not legally eligible for the death penalty at age 18, that — that should not matter here in this — in this case. In the context, what matters is whether he — whether a Ramazzini or a reasonable person in the position of the suspect here would have interpreted that statement as a threat and whether that would have caused him to later confess. There is a very tenuous, if any, link between the death penalty reference and the later confession. We have, as I pointed out before, a key intervening circumstance, 30 minutes after — 40 minutes after this ambiguous reference to the death penalty, the investigator leaves the interview room briefly and comes back into the interview room and tells Ramazzini, we've got a new development here. The development is that the co-defendant, it turns out, is starting to talk. He's confessed to his involvement in the murder, and he's starting to implicate you. At that point, at that very point, Mr. Ramazzini says, I was there. It happened. That is the point at which he begins to retract his earlier story, which was not true. And that is the point that the State court found was the cause of the confession. If the Court has any other questions, I will reserve the rest of my time. Roberts. Not at the moment. You may reserve your remaining time. Let's hear from Mr. Bonneau. Bonneau. Thank you, Your Honor. I may please the Court. Charles Bonneau appearing for Petitioner and Appellee, Nathan Ramazzini. Your Honors, it seems to me the Court has two questions before it today. One, and in the broader scope of things, the issue that makes this case important is what standard of review you're going to apply to voluntariness issues where the confession has been tape-recorded. Most of the cases that have come before the Court in the past have relied on the testimony of the officer, the testimony of perhaps the defendant or someone else describing the interview, and the State court has then made factual findings of what was said and what was not said. We don't have that here. But why should the fact that the tape recording was made of the confession make any difference in terms of applying AEDPA? It — there's a huge watershed in AEDPA between your review of findings of fact versus legal conclusions, including mixed questions of fact and law. If it's simply a factual finding, the State court has a hearing on it and makes its finding, and that is virtually bulletproof when the case gets to the Federal Court, as long as there's some factual record to support it. Now, if it's a — if it's a legal question, then the State court decision is subject to deference, but it can be found to be objectively unreasonable in light of United States Supreme Court binding precedent, which this case is. Do you agree, Mr. Bernstein, that this is a mixed question? Yes. Fact and law? Yes. All right. How would you — how would you analyze it, then, in terms of where we are at this case? I think where we part company is that he concedes that voluntariness is a legal issue. He, however, says that the subsidiary issues are factual issues, including, in this case, promises and threats. Now, we disagree with that. We think that promises and threats are also legal issues, mixed questions of law and fact, which are subject to deference but are not binding factual determinations. Indeed, I think to make this part of the law at all consistent with the rest of the documents, they — a promise is part of a contract. But don't we still have to evaluate the State court determination under the AEDPA standard, which requires objective unreasonableness, either in the application of Supreme Court authority to the facts or in the determination of the facts themselves? Yes. And we're comfortable with — we're comfortable with that review. That's the review that we're familiar with. The problem I have with it is that the magistrate judge says in his lengthy written opinion, I reviewed the videotaped confession. Yes. And based upon my review of the videotaped confession, although I have some hesitancy in declaring — I hereby declare that the California court's determination was objectively unreasonable. Yes. To me, that reads like nothing more than second-guessing the determination of the State courts in derogation of the AEDPA standard. Isn't that the quintessential, I just disagree with the determination of those courts on the same factual evidence? No. That's — well, it is the same factual evidence. I agree with that. And a disagreement over the application of Supreme Court law to the facts that are before everybody, because you can look at the tape and see exactly what was said and how it was said. There's no factual dispute here. That's — if I sit down, having convinced you of nothing else, that's what I would hope that we all agree on, is that this is a question of law, not a question of fact. Well, it's not just that simple, though. It's an application of the facts to legal doctrine, which makes it a mixed question of law and fact. And that puts it into the arena where we can — we can then argue to you that it was an — that the State court decision was objectively unreasonable. I think I can demonstrate that. But didn't the Supreme Court tell us in Taylor that objectively unreasonable means more than just they got it wrong? Yes. I mean, it has to be essentially so wrong that no reasonable jurist could have reached that conclusion on the basis of this record. Isn't that what the AEDPA standard means? I think that's an overstatement. I think that the — whether two objective — whether two jurists could get it wrong, that's — or three, I don't think that should be the standard. So you wouldn't agree with Mr. Bernstein that, well, the decision was plausible on the part of the Federal district court. You could look at the facts that way. But the decision was also plausible on the State appellate side. And therefore, if it's a draw, AEDPA says that we balance the scale in favor of deference to the State court. No. I'm not so forgiving of the State court. Here's what the — what I think is the core of the State court opinion. Here, Benitez — this is quoting — here, Benitez was merely indicating that the crime was punishable by death for Contreras, for Contreras, who was over 18. Now, the question is, is that an objectively reasonable statement? And the magistrate judge said, no, it's not. And we're asking — Well, I know what he said, but simply slapping the label on it and announcing I declare that subjectively unreasonable doesn't help me much. That — Well, I can go — The question I have to ask you is — I'm sure you've viewed the tape many times. Your position, I guess, has to be that — that it's — it's completely ludicrous that the State courts could have looked at the way that that interrogation was conducted and have concluded, as they did, that the reference was to Contreras' possible penalty and not Ramazzini's. I'm not using terms like ludicrous or that this is — this — Justice Bleas was — is a — the only judge in the country who would say — reach this conclusion. I don't think that's what we're here for. The question is whether this particular analysis was objectively reasonable or not. If it's objectively unreasonable, then the — then it is a way of undermining the Federal Constitution and the — and basically draining it of — of any enforceability. But I think your position presupposes what the Supreme Court has told us time and again we — we shouldn't presuppose, and that is that State judges are just as competent to decide questions of Federal constitutional law, particularly when it comes to the voluntariness of confessions as we are. And AEDPA does not give us a roving commission to go around and overturn the decisions in cases where reasonable jurists could disagree on — in looking at the same videotape. It's got to be something more than — But the Federal courts have a role in this area, in the enforcement of the Constitution, in ensuring — and in ensuring that State courts do not drain the Constitution, most particularly by making these disabling, quote, factual determinations that just simply drain any meaning out of the voluntariness review. We have to be able to review it. We think — I think I can demonstrate that this is objectively unreasonable. What the State court was saying was that if Agent Benitez had been asked, he would have explained to you. He would have said, yes, I really meant to refer to Leo Contreras. I didn't mean to refer to Nathan Ramazzini at all. After all, I've been a detective for years. I well know the difference. What do we do with the hour-and-a-half gap that Ramazzini doesn't break under that, quote-unquote, coercion in the determination of the Federal jurists who have reviewed it? He breaks an hour-and-a-half later when the detective comes in and says, hey, Ramazzini, Contreras is laying this murder off on you, and you're going down. Well, first of all, it's not an hour-and-a-half. It's more like a half an hour. Between the point where Benitez says this is a death penalty case, he gets up a half an hour later, leaves the room, and comes back with the information about Leo. Okay. Now, here is what happened in that sequence. A person in Ramazzini's situation, a suspect, is, first of all, seeking to, as it were, prove himself innocent. I wasn't there. I didn't have anything to do with it. Once he's told that this is a death penalty case, that another factor comes in. If I – if they can show that I was there, then I might get executed. On the other hand, if I can show that Leo was really – had more to do with it and was more the heavy, then they'll execute him and not me. Now, that – the detectives know that. So what – they want to put him, the suspect, in the situation of arguing about his relative guilt. And that was – that's been recognized for years. It's discussed in the – in the Miranda opinion itself. And in Frazier v. Cuff, which – which recognizes that the police can actually do what apparently they did in this case, which was to say, look, we found the victim's blood in your car. If you mean that they can mislead him, yes. In fact, I was going over the notes. I don't know if, from this record, whether Leo even implicated the defendant at this point or not. We didn't – that doesn't really make any difference. The agent may have been lying about that, too. He may have been – he was lying about the blood. He was lying about a lot of things. We do have Ramazzini's post-arrest admissions to his fellow inmates at the Marysville Juvenile Detention Center. Well, we're – we're down the road a little bit when we get to that. Now, we – I mean, that all came in at the trial, right? We have to look at that in the context of assessing. Well, that doesn't help us decide whether this was a voluntary statement. It could – that factors into the question of whether this is reversible error. Under Breck v. Abrams. Yes. So – so – and that was addressed in the – in the Court's opinion as well. But this is – this is well before that, if that even happened. This is well before that. And so the – what we have to determine now, whether it's reasonable for the State court to have said that the reference was only to Contreras. The magistrate judge in the district court could not find any reason to make that conclusion. That's why they said it was objectively unreasonable. And, again, I can – let's see. I have time. I can demonstrate it. The – the – had Benitez – Benitez did testify, but he was not asked about the death penalty statement. Had he been asked, do you – what did you mean by that? And had he tried to patch things up by saying what he really meant, then there would be some factual basis for this. But there isn't. Mr. Bernal, did – at the – I assume you were not trial counsel, or were you trial counsel? I was not trial counsel. Okay. At trial, did defense counsel argue to the jury the voluntariness of the confession? To the jury? Yeah. In other words, we typically admit this evidence in cases. The jury got to view the videotape, as I understand it. And the defense can, if it wishes, challenge before the jury the voluntariness of the confession in hoping to convince the jury that they should give less weight to the – to the admission. Right. That – that's usually a tough sell. It's – you're usually better – I guess my question is, factually, did it happen here? No. No. You're usually better off by – by – To just leave it alone. By leaving that alone, adhering to the statement, and making what – what – You can't. What's making, you know, a silk's purse out of a sow's ear. I only hit him once with the aluminum baseball bat, and that's all I did. What – yeah. Whatever you can make of – of the statement. But – but probably not trying to convince the jury that it's involuntary. It's a – again, it's a legal question. It's more – it's appropriately addressed to judges. But if I can just complete that line of reasoning, if Benitez had said what he really meant, then we would be at the – at the stage of – of no longer objectively analyzing what he said. And under Rhode Island v. Innis, that has to be an objective – an objective process. Which brings me to another point. I hope the Court has my supplemental authorities. I cited in those the recent case out of the – Out on November 9th. Yes. Yes. We have it. I – I think it's on the second page. Blake – it's now called Maryland. Blake v. State, Maryland. Maryland. Maryland. That's – the magistrate judge did a very thorough job, and so did the parties, in trying to find a case in which a juvenile had been told that it was a death penalty case. And we couldn't find anything. And – and that now is – presents a very similar issue that's now before the United States Supreme Court, where a juvenile was told that this is a death penalty case. So we – we now have that question pending in the United States Supreme Court. But for your information, the Maryland Supreme Court has had no trouble with this, saying that once you reference the death penalty, the confession follows its involuntary – its influence by that misrepresentation of the death penalty. And that's our position here. The 30-minute gap, I don't know what they're saying. Are they saying he forgot it was a death penalty case? Well, let me try to understand your position. Is it your position that any mention whatsoever, even when you have an adult co-defendant who clearly was facing the death penalty, I mean, that is a true potential punishment for this – That part's true. That part is true. I mean, how is that going to change if we have a State court factual determination that Agent Benitez was referring to Contreras and not to Ramazzini when he talked about the death penalty? Because there's no factual basis. Taylor v. Maddox underlies this, underlines this. Where the State courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to Petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable. So if this wasn't a factual finding, but if it was, it lacks an underlying record. If there was an underlying record, if there was testimony from Benitez about what I really meant, it would merely tell you that this is irrelevant information under Rhode Island v. McInnis because his intent has nothing to do with it. It's an objective determination. Well, what more do we need than the videotape says it all, does it not? Yes. I mean, who cares what Benitez thought unless he, you know, was — would admit that I was trying to get him to misapprehend that he was under a potential death sentence? I mean, and the jury heard the tape, and we can look at it and see. So the factual record is never going to change, is it? It's never going to change. Okay. And — and — but the State court added to it. They said — they reached another conclusion, an additional conclusion. They gave Benitez a break. They said, you know, maybe he misspoke, but what he really meant was that it's just Leo. Well, as the magistrate judge said, where is that on the tape? There's nothing in the — in the record that supports that finding. I take it Blake v. the State involved just a juvenile and a reference during the In — in Blake, they handed him the indictment, and it said at the top, death penalty case. One of the officers said, I bet that makes you give a second thought about talking to us. Okay. So we didn't have a situation like we have here with an adult co-defendant who's also being interrogated simultaneously with Rems. No. No. Okay. No. All right. But — but once you have that — that information, now, the — the — if — if we — if I can — Does the age make — is the age the significant differential here? Well, technically, the age would be 16 to 18, no — no death penalty — no death penalty exposure. But suppose Ramazzini were 18. Would that have made a difference in your analysis? Oh, yeah. Well, then it would be true. But it's false. That's — that's the whole problem here. It was a false threat of something that was — that — that couldn't happen. There are cases in which adults were told — Assuming it was directed at Ramazzini. Assuming it was directed at Ramazzini. That's — that's the — that's where the State court was found to be off base, is saying that this is somehow just limited to Leo Contreras. Now, if — if this is a legal question that this court is — is — feels willing and able to address, then it goes to a question of voluntariness and whether the fact that he was 16 and a half, no prior criminal record, gets told that it's a death penalty case, 30 minutes later, which the attorney general finds, you know, wipes the slate clean, we don't think that's true at all. We think he was — he had that very much in mind. And he's — he's then told that Contreras is shift — is shifting the blame on him. He adds two and two together. Death penalty plus Leo saying, I did it, equals I have to come up with some story that — that minimizes my involvement. That's where we get into involuntary statements. Thank you. Thank you, counsel. Your time has expired. Mr. Bernstein, you have some reserve time. Thank you. I appreciate the opportunity. I want to respond to a few of the points that Mr. Bonneau was making. First, there is precedent for this Court to interpret as a factual determination a undisputed dialogue. In Rup — Rupi v. Wood in 1996, the — the statements were, I think, either audiotaped or videotaped, but they were tape-recorded. There was no dispute about what was said between the investigator and the suspect. And in that case, the State court found that the statements were not threats. They were appeals to the conscience. And the Federal court found — the Ninth Circuit also found that those statements were factual findings which were afforded deference under 2254d. Further, Mr. Bonneau was arguing that if you have a — a threat or a promise from an undisputed record, that that is a legal determination. I submit that it's not. Whether a threat was made or a promise was made is one of the circumstances or elements that goes into the voluntariness finding, because not all threats are coercive. Rhode Island v. Innis, and I don't think it's the part of the case that Mr. Bonneau was referring to, but a subsequent part of the case, does say that a subtle coercion may or may not — a statement of subtle coercion may or may not result in an involuntary confession. The confession has to be the product of the words or the actions on the part of the officer. Here, the State court analyzed those circumstances and found it was not the cause of the confession. In terms of the — the discussion of whether the State court's determination was objectively unreasonable, there are some circumstances that need to be looked at, that need to be kept in mind. At the point at which Agent Benitez said that this is a death penalty case, Contreras, the co-defendant, was in jail. He was facing murder charges. Ramazzini was not arrested. He was not charged. He was not accused of being a part of the murder in any way. The investigator suggested at some points that Ramazzini knew something about this that he wasn't letting on, but he never suggested to him that he was a participant in the murder. I think at one point he said, you may be an accessory. If Leo Contreras did something and you were giving him a ride afterwards, you may be an accessory. But he never — he never said that — he never suggested that you had anything to do with it. And so from — from — You're not — you're not arguing to us that this was a noncustodial interrogation, are you? Is that your argument? Well, there was — It took place in the sheriff's office. They've Mirandized him. They brought his parents down before they conducted — It was custodial, and that's why he was Mirandized. Your — And I assume that he was — that they didn't let him walk out of the door after the interrogation was over, based on what he said. Well, he — He went directly to the juvenile holding facility. That's correct. But he was never placed under arrest. He was never put in handcuffs, even when he was transported down to the sheriff's office. He was never handcuffed. He was never told you're under arrest. It was only afterwards. Oh, okay. So I see your argument is that that goes to the — to support the State court's factual finding that — that there was not coercion here. Or that the statement applies — Impermissible coercion, I guess, would be — Yes. And also that the statement could have been reasonably interpreted as applying only to Contreras, because at that point, Contreras was the only one who was being booked in on a murder charge. Gramazzini was merely being questioned about it. The — the reference to the case currently before the United States Supreme Court, Blake v. Maryland, the facts there are a little bit different, as this Court observed. In that case, we had a — a suspect who was shown a charging document which — which said death penalty on it, or referred to capital punishment on it. There was no question but that he was the person that might be subjected to — His name was on the charging document. His name was on the charging document. And furthermore, even if the United States Supreme Court finds that under those circumstances that the reference to the death penalty was coercive, I don't think that helps Mr. Ramazzini in this case, because what we have to look at is whether the State court's interpretation of Supreme Court law was reasonable at the time that the State court decided the case. There was no clearly established Supreme Court law at the time in 1998 when the State appellate court found that this reference to the death penalty was not inherently coercive. Any other questions that I might be able to address? No further questions. Thank you, counsel. Thank you. The case just argued will be submitted for decision.
judges: Goodwin, O'scannlain, Tallman